Case number 15-5210, United States of America, United States Department of Justice, et al. v. Philip Morris USA Inc., formerly known as Philip Morris Incorporated, R.J. Reynolds Tobacco Company Appellant, Brown & Williamson Tobacco Corporation, directly and as successor by merger to American Tobacco Company, et al. Mr. Monell for the appellant, Mr. Yellen for I believe United States of America. Before we start, I want to advise everyone that Judge Sintel will be taking the case on the tapes, and Judge Edwards will be right back. It is a slightly disorganized morning here at the D.C. Circuit, but why don't we just give Judge Edwards one second to get back here. He was stuck in traffic and didn't show up until a minute ago and came straight to the courtroom. I should just go ahead and hear the whole case right now. Decide it and we'll be done. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. I deeply apologize. Mr. Mandel, why don't you proceed? Sorry about that delay. It's not been a good morning so far. I already explained all that, Harry. I hope we can improve it. Yes, please do. May it please the Court. Prior to trial, Brown & Williamson Tobacco Corporation was reconstituted into Brown & Williamson Holdings, which was subsequently dismissed from this case. That dismissal logically nullified the provisions of Order No. 1015  Yet the District Court now insists that a different defendant, R.J. Reynolds Tobacco Company, must televise the corrective statements on Brown & Williamson's behalf. The District Court's insistence exceeds its authority under Section 1964A of the RICO statute and lacks any basis in law or logic. Consequently, Order No. 55, Remand, from the District Court must be reversed. Federal Rule of Civil Procedure 60B-4 provides an avenue for relief from a judgment that is void. A judgment is void, this Court explained in the Karsner decision, when, quote, the rendering court was powerless to enter it. This Court has repeatedly held that Section 1964A is a constraint on the District Court's power. Wouldn't it be better to focus on Espinoza? That's the Supreme Court, and that's post-Karsner. Why don't you talk about Espinoza? Certainly, Judge Tateloff. The Espinoza decision is a Supreme Court decision post-Karsner, but it does not... That's why I asked you that. But it does not really address the issue here. The Espinoza Court made clear that that case presented no jurisdictional issue, and therefore the Court had no occasion to explain what kind of jurisdictional defect. It says Rule 60B-4 applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error, and what it was referring to there was both subject matter and personal jurisdiction, or if there's a due process problem. Judge Tateloff, it does say a rare jurisdictional error. We do not believe that the opinion is clearly stating that that needs to be a subject matter or a personal jurisdiction problem. Well, how could you read that sentence in any other way? It says only in the rare instance where a judgment is premised either on a certain type of jurisdictional error, and it cites cases citing subject and personal jurisdiction. So what other kinds of jurisdictional... Well, go ahead. You go ahead. Well, the courts have repeatedly found that 60B-4 relief is appropriate even where there is both concededly subject matter jurisdiction and personal jurisdiction. That happened in the U.S. Supreme Court in Claprot, which was a due process issue. It happened in this Court in the Karsner decision. Seventh Circuit in indoor cultivation. So wouldn't that theory... I know what other courts have said, and our Karsner decision is, of course, pre-Espinosa. But if you're right, that is, if we go beyond subject matter and personal jurisdiction to courts exceeding their remedial authority, doesn't that virtually eliminate the finality principles that Rule 60B-4 is designed to protect? It means that any time a court exceeds what one party believes is its remedial jurisdiction, then the party can raise that under 60B-4 even 10 or 20 years later. I don't think that's correct, Judge Tadal. It would still be limited to where there's an actual jurisdictional error. What a party thinks is not dispositive is what the court... In any case where a court exceeds its authority under the statute, in other words, in cases where the court has subject matter and personal jurisdiction, but yet issues an order that exceeds its statutory authority, your theory is that can be brought under Rule 60B-4. And my question is, doesn't that completely open up 60B-4 as an end around the finality of judgments? I don't think it does, Judge Tadal, but even we can put that aside here because it is the law of this case and the law of the circuit that 1964A is jurisdiction. Okay. Assuming I don't agree with that, then what's your answer? My answer continues to be that this does not swallow the finality principle because in those limited examples and statutes where there is actually a jurisdictional import to the remedial provision, like in this one, Rule 60B-4 would be... Is there something about this statute that is unique and that would give us some feeling that if we agreed with you, it wouldn't open up the door to other statutes? Absolutely, Judge Tadal. As this court held in its disgorgement opinion, the statute here is really based on equitable jurisdiction and is therefore jurisdictional. Let me read you the key language from the Sherman Act. It gives district courts, quote, jurisdiction to prevent and restrain violations of the Sherman Act. So under your theory, whenever there's a Sherman Act judgment by a court with jurisdiction, if 20 years later it's discovered that that remedy, whatever it was under the Sherman Act, exceeded the jurisdiction authority of the court, that could be reopened under 60B-4, right? If the court has held that that is... There are dozens of statutes that read just like this. Dozens. Again, Judge Tadal, the difference between, for example, Section 1964A and the statutes that are cited as examples in the Steele Code decision, for example, is that this court has held that 1964A as part of RICO is firmly rooted solely in the court's equitable jurisdiction. It's not a case of whether there's a cognizable cause of action. It is a question specifically of the district court's power and limited remedial authority. That sets it apart from other statutes. Even if this court does not find that 1960... Excuse me, that Rule 60B-4 is the appropriate remedy, alternatively, we're entitled to relief under Rule 60B-6. The district court erred in denying that relief. It held that the request was waived, that the request was untimely, and that the request lacked merit. It was wrong on each of those grounds. There is no waiver here because the defendants, Brian Williamson Holdings and R.J. Reynolds, bear no fault for the delay in the resolution of this issue. Bear no what? Bear no fault for the delay in the resolution of this issue. Well, go ahead. And why is that? The defendants have diligently litigated this issue throughout. At the time before trial that Brown and Williamson tobacco was reconstituted into BWH, Brown and Williamson gave the district court notice of that transaction. The defendants raised the issue of whether BWH could be held liable for forward-looking remedies in their post-trial motion. The defendants raised the issue again before this court on the remedial appeal, and the government at that time urged it should be decided in the first instance by the district court. This court remanded on that issue, and Brown and Williamson Holdings was dismissed in Order 7 Remand. Years later, when it first became clear in mediation that the government and the interveners did not believe that that dismissal could resolve the issue, the parties preserved, and RJRT filed a motion in the district court for relief immediately. See, what troubles me, I'll just take you to the core of my concern about your argument. In response to the intervener's argument that we lack appellate jurisdiction, you say in your reply brief, in footnote 5 of your reply brief, you say we have jurisdiction because your Rule 60B motion sought to, quote, dissolve the double-add requirement. And in fact, your motion actually says that. It says you're seeking relief from the requirement to do double-adds. And that's, as you point out in your footnote, exactly the way you preserve your appellate jurisdiction here, because it's not, as you point out, a motion for clarification. But why doesn't that doom your Rule 60B-6 claim? Because if the injunction was, the decree was crystal clear and required an actual modification, you really have no reason for not raising the issue back in 2006. I don't understand the argument for that. The issue was, first of all, there are two things. Number one, Order 1015 is not crystal clear. What is it? Order 1015 is not crystal clear because it imposes obligations on Brown and Williamson. Can you lift the podium up? Hit the button on your bottom right to lift it up. On the bottom right, there it is. The only— It says it applies to each of the defendants, and then it lists three that it doesn't apply to, and to each of their current and future successors. And then in your actual 60 motion, 60B motion, here I'm just looking for the language, you say specifically—you say in your Rule 60 motion that you're seeking relief from the order which requires corrective statements on behalf of Brown and Williamson in addition to RJR. I mean, your whole strategy here has been that this notice that the original decree is crystal clear. In fact, as you point out in your footnote in response to jurisdiction, if it had been a motion for clarification, we wouldn't have 1292 jurisdiction here, right? Do you see my point? I see your point, Judge Tatel. There's no rule of civil procedure that provides for a motion for clarification. Sure, Rule 59E. Well, but we would not have been timely under Rule 59 at this point. We brought this— That's my whole point. You should have filed it back in 2006. But we did. That's what Rule 59E is for. 59E is designed to clarify orders, injunctions that are not clear. But Judge Tatel— And you have, what, 28 days to file. We did pursue this in 2006 when Brown and Williamson Holdings, the only Brown and Williamson entity that was still part of the case at that time, appealed as part of the remedial appeal to this court, saying it could not be subject to the order because it had no capacity for future violations. That was credited by this court. It was stipulated by the government and the interveners below, and Brown and Williamson Holdings was dismissed. At that point, those obligations that were in 1015 that vaguely point to Brown and Williamson were nullified. There was no possibility that this could be raised earlier because there was no way it was foreseeable. The order is simply not clear. Then, if that's true, you—we don't have appellate jurisdiction in this case. No, Your Honor— And that's what your footnote says. Footnote 5 distinguishes this case from a case, the intervener's site,  In fact, in this very case, U.S. v. Philip Morris a few years ago, we ruled in a case just like this. Judge Sentelle wrote the opinion, and the court— I think the United States had asked the district court to clarify something. The district court either did or didn't. I can't remember. Defendants appealed, and this court ruled in an opinion by Judge Sentelle that we have no 1292 jurisdiction because it was not a motion to modify or amend a judgment. It was just a motion for clarification. And if this order is unclear, then we don't have appellate jurisdiction. See, you're caught between—it's either clear in which—this is a question. It's either—if it's clear, as you say in your motion, Rule 60 motion, then I don't see where you have explained the delay in bringing the issue to the court. And if it's not clear, then I don't see how we would have 1292 jurisdiction. I'm stuck between those two things. Can you help me? I can, Judge Sentelle. The answer is that it's clear, just not in the way that the government and the interveners proposed. It is clear that Order 7, Remand's dismissal of Brown and Williamson holdings nullified the obligations imposed on Brown and Williamson. When the government and interveners disagreed with that position, we filed a motion asking the court for relief. If the district court had agreed with us that it was clear, it would have denied the motion as moot because Order 1015 meant what we said. But rather than file an order for clarification in the wake of the disaggregated marketing decision, as you pointed out yourself, we filed the motion for relief. The district court disagreed with us, imposing an obligation that had not existed, and we can bring a motion for relief. And we're entitled to appeal that new obligation. With the court's permission, I reserve my remaining time. Okay. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. I'm Louis Yellen from the Department of Justice. I'm here today on behalf of the United States. Before I respond to any questions that the Court might have, I'd like, if I may, just to make a couple of points. The first is, even assuming the Court were inclined to accept defendants' contention that at the time of the 2006 order, there was reason that defendants couldn't have raised the precise issue of the television spots at that time. At the very least, by the time of the 2014 so-called consent order, it became unambiguously clear. In that order, if the Court were to look at pages 59 and 60 of the joint appendix, the district court unambiguously assigned a total of 104 spots to RJR and 52 spots each to the remaining three defendants. The district court ordered 260 spots total and assigned two-fifths to RJR and one-fifth each to the remaining defendants. The defendants objected to various aspects of that 2014 order and purported to reserve their rights to seek further review. And indeed, RJR expressly identified the number of televised spots as an issue to which it objected and reserved its right to seek further review. But when the defendants appealed in 2014, RJR did not raise the issue of the televised spots. Instead, RJR sought 60B relief from the district court, and the district court denied that relief quite appropriately. Whether RJR is responsible for 104 or 52 television spots is not a jurisdictional issue within the meaning of Rule 60B-4, and RJR's objections to the number of televised spots it has to run doesn't establish the sort of inequity or hardship that's required for 60B-6 relief. I think that, Judge Tatel, your focus on Espinoza is, in the government's view, exactly the right place that the Court should look. Indeed, Espinoza has expressly rejected the theory that RJR is here proposing. The Court rejected the argument that, and I'm quoting, an order is void because the Court lacked statutory authority, close quotes, to enter it. That's at 559 U.S. 273. So even if conceivably Rule 60B-4 included, potentially included jurisdictional errors beyond subject matter and personal jurisdiction, even if RJR were potentially right about that, RJR's theory What do you do with footnote 10 in the decision? I beg your pardon, Your Honor, I don't recall footnote 10. Footnote 10. Yes, I'm sorry, I heard you. I don't recall footnote 10. Oh. That's the key part of the opinion from RJR's point of view. That's where the Court said we are reading open the question of whether, of whether, you say in your brief, your view is this, as I understand it, the government's view is, RJR concedes the subject matter and personal jurisdiction and no due process, and, quote, you say in your brief, that ends the matter, right? But in footnote 10, the Court expressly leaves open the question of whether defects that are not jurisdictional could, in other words, be raised under 60B-4. Oh, yes, Your Honor, and I have now have the opinion in front of me, and I'm looking. So does that leave open this very question? With respect, Your Honor, that's what I was trying to address just a moment ago. Even if RJR were right about the abstract question, whether there are some other possible defects, RJR's theory in this case is one that Espinoza expressly, expressly rejected at page 273 of the opinion. That is, the government had contended in Espinoza that the bankruptcy court's confirmation order is void because the court lacked statutory authority to confirm Espinoza's plan absent a finding of undue hardship. Now, the Supreme Court in Espinoza said, as a matter of statutory interpretation, you're right. The bankruptcy court did lack statutory authority to enter a confirmation order absent the finding of undue hardship. Nevertheless, that's not sufficient to make the absence of… But that's true of the cases that the court was discussing in the footnote. The other aspects of the statute here, for example, precluded a bankruptcy award that affected, what, custody. In other words, the bankruptcy court had no authority to relieve someone of a custody. It would be beyond the authority, but the court left that open. What the court left open, as I'm reading the footnote, Your Honor, is other provisions that provide that certain debts are not dischargeable under any circumstances. I don't understand RJR in this litigation to be arguing that the district court lacked authority to enter an order requiring televised corrective statements. In fact, this court has already affirmed the district court's authority to do that. So the remedy that's at issue here doesn't come within the footnote because the remedy is not something that's impermissible under any circumstances. Rather, it's a question about whether RJR is responsible for 104 or 52 televised corrective statements. So I think that brings it out of the question that the court was reserving in footnote 10 of Espinoza. Okay. By the way, does the government have a view about our appellate jurisdiction here? We do think that the court has appellate jurisdiction because we think that the district courts, for the reasons you're colloquy with opposing counsel suggested, that the district court, the original remedial order made clear that RJR was going to have some responsibilities as successor to Brown and Williamson, and the district court denied a Rule 60B motion which had the effect of denying a request for relief of an injunction, which brings this appeal within the court's 1292A1 jurisdiction. I would only also say that because RJR could have raised this issue in the 2014 appeal but chose not to, that is a reason for finding, in fact that's a determinative reason for finding, that RJR has not made the showing of extraordinary circumstances that are required for relief under Rule 60B-6. A party that had an opportunity for appellate review and chose not to pursue it cannot later get relief under Rule 60B-6. RJR says in response to that that the government agreed in 2008 that the district court should decide the matter in the first instance. With respect to opposing counsel, that's a little bit of an exaggeration of the government's position. What the government said in 2008 is that the district court should consider the status of Brown and Williams holding, which is a separate question than whether or not RJR had responsibilities in light of its acquisition of Brown and Williamson tobacco. I guess the only other thing that I would say about that is that RJR suggests, even if RJR thought that it was most appropriate for the district court to rule on its Rule 60B motion before presenting the issue to this case, back in 2014, RJR could have apprised the court of the pending Rule 60B motion, which it filed some two weeks before the appeal was noticed, and asked the court to refrain or to hold its appeal in abeyance while the district court could rule on the 60B motion. Then there would have been a completed Rule 60B decision, and both matters could have been heard at the same time in 2014. That would have accomplished all of the goals that RJR purports to be interested in, while not waiving an opportunity to have this court review the issue at its earliest, at RJR's earliest, supposedly earliest opportunity. Again, as I suggested a moment ago, we agree with the earlier colloquy that the 2006 order was sufficiently clear on its face to make it, RJR, appreciate that it would have obligations in light of its acquisition of Brown and Williamson tobacco. Let me ask you, as I understand their argument, the thrust of their argument is that the law of the case, and maybe the statute as well, forecloses the scope of the district court's remedy determination. That's essentially what they're saying, right? I do think they say that. They say they... Okay. That certainly seems to come across to me. That is, given this litigation and the law of the case and how we've construed the statute here before, I think what they're saying is there's no possibility that the district court could issue an order that goes as far as it does, right? I believe that's correct. Yes, Your Honor. Okay. So how are they supposed to get review on that? I'm sorry, Your Honor. How are they supposed to get review on that when the district court now holds the opposite? They could have in 2014. It was collusive in 2014 at the time that the district court entered the consent order that RJR had responsibility for televising corrective statements on behalf of Brown and Williamson Tobacco Company, the acquisition of that company. In its 2014 appeal, in which the defendants objected to numerous aspects of the consent, so-called consent order, RJR could have raised that issue before this court at that time. So perhaps I'm not fully appreciating Your Honor's point, but it could have come up as a matter of course in that appeal. RJR chose instead to raise it as a Rule 60B matter. Okay. Yeah, it's a very convoluted procedural, I mean, posture. It's very strange to me that you acknowledge, as I expected you would, there's no doubt that they could raise this. Indeed, they preserved it. And you're just saying they raised it the wrong way. Well, I'm sorry, Your Honor. As best I can understand. I'm saying they purported to reserve it. As this court held in its very last opinion, the defendants purported to reserve a lot of rights that they had previously waived. I am not at all suggesting that they would have been able to succeed on the merits of the claim. The only thing that I'm suggesting is for purposes of Rule 60B-6, in which a party is not permitted to seek relief under that provision, if they forewent an opportunity to seek appellate review, Your Honor. Rule 60B-4. Oh, 60B-4. So, I'm sorry. Now I see the thrust of your question. We just simply disagree that the law of the case says that the district court's remedial authority is jurisdictional in the relevant sense. The Supreme Court, as you read the Supreme Court case law, are you citing, do you mean to cite cases in which the Supreme Court was construing a statute where the words jurisdiction was included within? So. And this provision says jurisdiction. It most certainly does, Your Honor. But we know from Steele Co. and this Court's cases interpreting Steele Co. that Congress routinely uses the term, has routinely used the term. No, no, no, no, no, no, no, no. Steele Co., we've gone past Steele Co. now. I mean, Steele Co., there was a great joust there between Justice Scalia and Justice Stevens and blah, blah, blah on all of that and what we mean about threshold, what can be decided at the threshold, et cetera. But Arbor postdates that, right? I beg your pardon, Your Honor? The Supreme Court's decision in Arbor? Yes, it does. Okay, so that's really the line of cases we're talking about. What does Congress need to say to make something jurisdictional? And here, does the inclusion of the word jurisdiction in the statutory provision, what Justice Ginsburg had in mind and what the Court has since said, Congress needs to be clear it's jurisdictional? They say it's jurisdictional. Your Honor, that's a necessary but not a sufficient condition. Arbor? I understand. So what I'm asking, I don't think Steele Co. has anything to do with this. So I'm happy to rely on Arbor instead. You're quite right that Congress has the authority to make substantive requirements jurisdictional prerequisites. RICO has never been understood to have its remedies as jurisdictional prerequisites to the exercise of the Court's authority to adjudicate a case. The question, the key question under Arbor, under any other line of cases interpreting Arbor, including this Court's, is whether the District Court had authority to adjudicate a particular case or, alternatively, whether the statute, although it uses the term jurisdictional, is just setting out the mets and bounds of the District Court's. I think what they're saying is their argument, and I'm not saying it's right, but their argument is the District Court did not have jurisdiction to entertain a request for a remedy of this sort. I mean, take any stupid hypothetical. If someone had come in and said because of what they've done in the past, they have to, I don't know, make contributions somewhere, anything that you and I would agree that that is not what the statute says, and the jurisdiction doesn't have a statutory jurisdictional authority to even entertain that. They would throw it out, right? I appreciate that that's their argument, Your Honor. I think the question answers itself. The question whether or not the District Court had jurisdiction, that is, authority to adjudicate, whether or not RJR has responsibility for 104 versus 52 television spots is not a limit on the Court's authority to adjudicate. It is at the very most under RJR's jurisdiction to adjudicate. I'm sorry. Yes, it's jurisdiction to adjudicate. So you're saying there's no such concept as remedial jurisdiction? Remedial jurisdiction, as I understand the term post Arbaugh, unless the Court, sorry, unless Congress is doing something in the statute that I have never seen, remedial jurisdiction is a term that refers to the authority that Congress has given to a Court to enter a particular type of relief and doesn't actually go to jurisdiction in the Arbaugh sense of the term. All right. Thank you very much, Your Honor. All right. Thank you. Did counsel have any time remaining? Counsel had 10 seconds remaining. You can take two whole minutes. Thank you very much. Minus the 10 seconds. Thank you. Briefly, this last colloquy about Arbaugh, this Court, post Arbaugh, has twice continued to assert that 1964A has jurisdictional import and limits the district court's power. Moreover, Rule 60b-4 does not use the word jurisdiction. Rule 60b-4 talks about when a judgment is void, when it exceeds the district court's power. We submit that is what happened here. And because Espinoza left open the issue of what kind of jurisdictional defect would apply, the D.C. Circuit cases in this case remain good law. Secondly, on the question of timing and appeal in 2014, RJRT filed its motion with the district court before it noticed its appeal from Order 51 remand, from the consent order. We also notified this court in the appeal. The United States now says that we should have come to this court and asked to delay that appeal while we litigated that. But that is in severe tension, if not outright conflict, with the terms of the consent order, which said that the defendants would do nothing to slow down the appeal and nothing to prevent the government from expediting the appeal. So the government's position now is very different. Tell me, just so I make sure, I'm just trying to, I'm listening to the two of you carefully. I understand the limits of your argument. Why didn't you choose, without regard to the fact that you had raised something with the district court, why didn't you choose to raise this on the 2014 appeal? Well, Judge Edwards, we had put it in the, excuse me, we had put it, we had filed it with the district court. We believed the district court would resolve it in time for the appeal. So what? The district court did not. No, no, no, my very candid response to that is so what? That's not the answer to my question. Why didn't you raise it with this court? Because attorneys frequently protect themselves in all ways. So you could have done both. Your Honor, we could have done both. We left it in the hands of the district court and advised this court that the matter was pending. That's interesting. Okay. Thank you very much. We ask that the order be reversed. Thank you both. The case is submitted.
judges: Tatel, Edwards, Sentelle